UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES PRICE,
        PLAINTIFF

CASE NO. I:08-CV-00015-SJD-TSH
(DLOTT, J.)
(HOGAN, M.J.)

vs

COMMISSIONER OF
SOCIAL SECURITY,
        DEFENDANT

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the

final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's

applications for disability insurance benefits (DIB) and supplemental security income (SSI). This

matter is before the Court on plaintiff's Statement of Errors (Doc. 8), the Commissioner's

Memorandum in Opposition (Doc. 11), and plaintiff's Reply Memorandum. (Doc. 12).

## PROCEDURAL BACKGROUND

Plaintiff, James Price, was born on July 2, 1961, and was 45 years old at

the time of the ALJ's decision. Plaintiff has a high school education. Plaintiff has past work

experience as a machine operator, warehouse worker and shipping/receiving clerk. Plaintiff filed

his application for SSI on June 30, 2004 and DIB on July 8, 2004, alleging disability due to

chronic back pain, radiculopathy and major depressive disorder and panic disorder with

agoraphobia. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff requested and was granted a de novo hearing before an ALJ. On February 9, 2007, Plaintiff, who was represented by counsel, appeared and testified at a hearing before ALJ David A. Redmond.

On May 17, 2007, the ALJ issued a decision denying Plaintiff's DIB and SSI applications. The ALJ determined that Plaintiff was insured through June 30, 2005. (Tr. 21 ¶ 1). The ALJ further determined that Plaintiff has severe impairments consisting of chronic lumbar strain and anxiety disorder, but that such impairments do not alone or in combination with any other impairment meet or equal the level of severity described in the Listing of Impairments. *Id.* ¶ 3. According to the ALJ, Plaintiff retains the residual functional capacity (RFC) for light work, but because of his chronic back pain, decreased concentration, reduced stress tolerance, and diminished interpersonal skills, Plaintiff is limited to jobs that would involve only minimal personal contacts. He is further limited to jobs that would involve pressure for production at no greater than a level 3, using a 1-10 scale. *Id.* ¶¶ 4, 7. The ALJ determined that plaintiff's allegations of total disability are not credible. *Id.* ¶ 5. The ALJ determined that plaintiff is unable to perform his past relevant work as a machine operator, warehouse worker, or as a shipping and receiving clerk. *Id.* ¶ 6. Relying on the testimony of a Vocational Expert (VE) the ALJ concluded that given plaintiff's ability to perform a modified range of light work, he could perform jobs which exist in significant numbers in the regional community, including: mail clerk; photocopy machine operator; microfilm processor; office helper; charge account clerk; surveillance system monitor; microfilm document preparer; and lens inserter. . *Id.* ¶ 20. Consequently, the ALJ concluded that plaintiff is not disabled under the Act.

Plaintiff requested review by the Appeals Council. The Appeals Council denied

plaintiff's request for review, making the decision of the ALJ the final administrative decision of the Commissioner.

## MEDICAL RECORD

The Plaintiff's medical record begins with treatment notes from the VA Hospital beginning January 21, 2000. Plaintiff was being prescribed Methadone as early as December 1999. (Tr. 456).

In September, 2000, Plaintiff stated his back pain was stable on Methadone. (Tr. 435) By November, 2000, Chowdry Mujahid Bashir, M.D., noted that Plaintiff was not taking his Methadone as a drug screening test had produced negative results. Dr. Bashir commented that he did not know what Plaintiff was doing with the Methadone that he was having refilled every month. (Tr. 436).

Dr. Bashir had stopped prescribing Methadone for Plaintiff in March, 2001. (Tr. 420).

In September, 2001, Plaintiff began seeing Susan Sorensen, M.D. Plaintiff requested a change of physicians, he stated he did not communicate well with Dr. Bashir. She reissued Plaintiff's tens unit and prescribed Percocet. Plaintiff was counseled on tobacco use, but he refused smoking cessation classes. His depression screen was negative. (Tr. 410-12).

In October, 2001, Plaintiff met with a nurse and Dr. Sorenson for pain management. The treatment notes reveal Methadone was prescribed again. Plaintiff also met with Nicholas Bambino for a mental health assessment and Plaintiff stated that he was taking Methadone for pain. He came to the mental health clinic for information on job training and VA Compensation. (Tr. 405-410). Two x-rays of Plaintiff's lumbar spine revealed lumbarization at S1 but otherwise

3

showed intact pedicles and symmetrical disc spaces. (Tr. 287-88). Plaintiff had a CT of his lumbar spine scheduled for October 26, 2001, but failed to report for his appointment. (Tr. 287).

In November, 2001, Plaintiff reported that Methadone was effectively controlling his pain. (Tr. 398). However, a staff nurse, reported that his last urine screen was positive for tranquilizers, even though Plaintiff denied having tranquilizers prescribed for him by other providers. Plaintiff also denied taking street drugs, although he acknowledged taking medications prescribed for his mother. (Tr. 399).

In December, 2001, Plaintiff was seen at an Urgent Care by Dr. Bashir for cough with blood and wheezing. He had no vomiting or fever. Plaintiff stated he had not taken his Methadone for the past 3 days, but was taking his mother's cough medicine. He denied alcohol abuse, but smelled of alcohol. (Tr. 394). On an addendum dated December 13, 2001, Dr. Bashir reported that Plaintiff's drug screening showed multi-drug abuse, even though Plaintiff denied he had taken any street drugs. (Tr. 395).

In July, 2002, a second depression screen was positive, but Plaintiff declined referral to Psychology. (Tr. 360).

In August, 2002, Dr. Sorensen referred Plaintiff to the sleep clinic at the VA. She stated the Plaintiff has history of substance abuse now. Plaintiff complained of insomnia and had been using Temezapam and appeared to be escalating it's use. (Tr. 313).

In September, 2002, Robert G. Marchioni, a physical therapist, noted that Plaintiff did not call to cancel a scheduled appointment on August 30, 2002. He did not respond to reschedule after one week. He reported Plaintiff will require new consultation from physician to be seen in the PT clinic. (Tr. 312, 314, 356).

4

In February, 2003, Dr. Sorensen referred Plaintiff to a psychiatrist at the VA after testing positive for amphetamines. Plaintiff was initially evaluated by Paul J. Schwartz, M..D. Plaintiff admitted to drinking at least five beers a night. Dr. Schwartz diagnosed depression NOS (not otherwise specified) and polysubstance abuse. He also noted that Plaintiff had lost jobs for testing positively for illicit drugs. (Tr. 154, 343, 371). Dr Schwartz's June 17, 2003, chart notes indicate that Plaintiff frequently missed appointments and had not refilled his original prescription. (Tr. 368).

In December, 2003, Plaintiff complained that his pain causes him to change positions from standing and sitting, and that his pain is relieved with lying still. Associated symptoms included depression, irritability, sleep disruption and guilt. Plaintiff was counseled on tobacco use. (Tr. 347-50).

In July, 2004, Plaintiff saw Scott Glickfield, M.D., and stated that he had been having problems with his back. Dr. Glickfield reported that his examination showed "no particular findings." (Tr. 522). Dr. Glickfield completed a Basic Medical form for the county Job and Family Services Department. He opined Plaintiff was limited to standing and walking 4- hours total in 8- hour work day and 1- hour without interruption; lifting and carrying 11-20 pounds frequently and 21-25 pounds occasionally; with extremely limited bending, markedly limited pushing, pulling, and reaching, and moderately limited repetitive foot movements. Dr. Glickfield concluded Plaintiff was unemployable for between 30 days and 9 months. (Tr. 489-90).

In August, 2004, Abdul Razik Gihan, M.D., a VA staff psychiatrist, noted that Plaintiff had failed to show up for an appointment for the second time in a row. Plaintiff was apparently upset with Dr. Gihan because Plaintiff had asked Dr. Gihan to write a letter for him but to not

5

mention substance abuse. Dr. Gihan, however, explained that he did not see how he could write a letter and not mention every condition that he was treating. (Tr. 563).

In September, 2004, Caroline T. Lewin, Ph.D. a reviewing state agency psychologist, concluded that Plaintiff could perform simple tasks that involved only minimal personal contacts. (Tr. 460-75).

In September, 2004, Plaintiff saw Adrienne Swift, Ph.D., for a clinical interview/mental status exam and psychological testing. Dr. Swift opined Plaintiff was moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions and maintain attention and concentration for extended periods; moderately limited in his ability to perform activities within schedule, maintain regular attendance and be punctual within customary tolerances; and markedly limited in his ability to complete a normal work day and work week without interruption from psychologically based symptoms and to perform at consistent pace without an unreasonable number and length of rest. Dr. Swift diagnosed a major depressive disorder and panic disorder with agoraphobia. While Plaintiff reported some improvement through psychotrophic medications, symptoms and related lower concentration/motivation appeared debilitating. Dr. Swift reported that Plaintiff was unemployable for 9-11 months at the time of her evaluation. (Tr. 476-77).

Also in September, 2004, Plaintiff was consultatively examined by Aivars Vitols, D.O., an orthopaedic surgeon. Plaintiff complained of intermittent low back pain and right leg pain. Examination revealed a normal gait. Plaintiff had moderate myospasm to palpation at the dorsolumbar spine, tenderness to palpation at the right S1 joint, restrictive range of motion, and positive straight leg raise on the right. Plaintiff's reflexes were intact in his lower extremities

6

and he had no sensory or motor defects in his upper extremities. X-rays of Plaintiff's lumbar spine showed no destructive bone lesions and the x-ray also revealed that the disc spaces were preserved at all levels. Dr. Vitols diagnosed chronic low back pain and depression as per history. (Tr. 478-482).

In November, 2004, Plaintiff saw Dr. Gihan and explained that he had missed his last three appointments because he was not driving and either could not arrange a ride or found that the ride he had arranged did not show up. Plaintiff reported that he was taking his medications and he did not report any side effects. Plaintiff also reported much improvement since Dr. Gihan had started him on Paxil. He claims that he had cut out his drinking, on previous appointments, he stated that he was not interested in giving up alcohol and that he had been using other narcotics, benzodiazepines, etc. Dr. Gihan believed Plaintiff was under reporting his problem in response to the letter issue in August. (Tr. 556-57).

In February, 2005, Plaintiff saw Kevin Eggerman, M.D., for a psychiatric consultative examination. Plaintiff drove himself, unaccompanied, to the interview. Plaintiff complained of anxiety and depression. At that time, Plaintiff reported he saw a psychiatrist at the VA Hospital once every three months. He denied any psychiatric hospitalizations. Dr. Eggerman noted that Plaintiff did not report any vegetative symptoms of depression. Plaintiff conceded a prior problem with narcotic abuse, but reported that he was currently compliant with his narcotic medications. On examination, Plaintiff was alert and oriented. There was no evidence of a thought disorder. His affect was somewhat depressed. He recalled three of three unrelated words after five minutes. He was able to abstractly interpret proverbs. He was able to mentally perform simple arithmetic calculations. Dr. Eggerman observed that Plaintiff ambulated without

7

assistive devices or antalgic behaviors. Plaintiff reported that he lived alone and did some household chores, such as washing dishes, sweeping, mopping, general cleaning and shopping. He further reported that he sometimes enjoyed social interaction, but avoided it at other times. Dr. Eggerman diagnosed social anxiety disorder in partial remission and he assigned Plaintiff a Global Assessment of Functioning (GAF) rating of 60. Dr. Eggerman opined Plaintiff's abilities to interact appropriately wiht others and to withstand normal work stressors was judged to be moderately limited. His ability to understand, remember, and carry out simple instructions was judged to be minimally limited. (Tr. 492- 97).

In May, 2005, Dr. Gihan reported that Plaintiff was stable on his medications, and that he was doing better since Dr. Gihan had increased his Paxil. (Tr. 552-53).

In February, 2006, Plaintiff called Dr. Gihan for a refill of Paxil. Dr. Gihan noted that Plaintiff was last seen in May 2005, and that he was "doing fine with no depression or anxiety" and that he was tolerating his medication well. He reminded Plaintiff to make an appointment before May. (Tr. 546).

In November, 2006, Dr. Glickfield noted that Plaintiff had been under a great deal of stress lately. Dr. Glickfield noted that Paxil "just does not seem to be working as well". Dr. Glickfield also commented that "[H]opefully can get his Social Security, certainly unable to work". (Tr. 581).

Dr. Glickfield completed a "Physical Residual Functional Capacity Questionnaire" and diagnosed Plaintiff with lower back pain and chronic depression with symptoms including back pain, weakness, depression and fatigue. Dr. Glickfield limited Plaintiff to walking 1/4 city block without rest or severe pain; sitting for 30-minutes at a time and 4-hours total; standing for 10-

8

minutes at a time; and standing and walking less than 2-hours total in an 8-hour day. Plaintiff would need periods of walking around every half-hour for 2-minutes at a time, and would need to shift positions at will from sitting, standing and walking. Lifting and carrying is limited to less than 10-pounds occasionally with occasional looking down, turning head right or left and looking up and no twisting, stooping, bending, crouching, squatting, climbing ladders, and occasional stairs. Dr. Glickfield opined that Plaintiff would miss work 4-days a month. (Tr. 571-75)

In November, 2006, Dr. Glickfield also completed a "Mental Impairment Questionnaire", Dr. Glickfield notes depression and pain severe enough to constantly interfere with attention and concentration. He lists Plaintiff's signs and symptoms as anhedonia, decreased energy, thoughts of suicide, blunt, flat or inappropriate affect, feelings of guilt or worthlessness, difficulty thinking or concentrating, emotional withdrawal or isolation and sleep disturbance. He found that Plaintiff was unable to meet the competitive standards to understand and remember detailed instructions, carry out detailed instructions, set realistic goals or make plans independently of others or deal with the stress of skilled or semi-skilled work. He also noted marked difficulties in maintaining social functioning. Dr. Glickfield opined that Plaintiff would miss work 4-days a month. (Tr. 575A-80).

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified that he stopped working in 2001 due to absenteeism, loss of concentration and too much physical pain. He reported experiencing chronic back pain radiating down his right leg into his anklebone, panic attacks and anxiety and depression. He testified that

9

he took Doxepin for depression, Paxil for anxiety, Nexium for stomach problems and Norco and Zanaflex for pain. He stated his pain medication makes him drowsy.

Plaintiff further testified that he never knows what kind of day he is going to have, and that sometimes, his panic attacks are so severe that he can't make himself leave the house. On a good day, he described his pain as dull and stated that on a bad day, he can hardly function. He further described numbness and tingling, problems with his leg giving out, and loss of feeling in his left hand. He reported problems with numbness in his leg and buttock and pain in his left foot with prolonged sitting. He also reported problems dropping things, especially in his left hand.

Plaintiff testified that his back pain limited standing to fifteen minutes in one hour and it limited walking to one and one-half blocks at one time. He could sit for 20-30 minutes at a time for a total of 2 hours in an 8 hour day. Plaintiff believed he could lift/carry up to 5-pounds. He also testified that he was limited to using his hands 2-hours a day.

Plaintiff further testified that he takes two 3-hour naps a day. He noted problems being around people and experiencing panic-like symptoms of chest pressure, dizziness and feelings of doom. He reported experiencing 3 panic attacks per week on average, lasting anywhere from 10-30 minutes. (Tr. 586-602).

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ's hypothetical question to the vocational expert (VE) assumed an individual who has the residual functional capacity to perform work at the light level; limited lifting up to 10-

10

pounds, ability to sit for approximately 15-minutes per hour, simple tasks, minimal personal contact, and a less-than average degree of pressure for production. The VE responded that the Plaintiff could perform work as a mail clerk, copy machine operator, microfilm processor and office helper, equaling approximately 10,000 regional jobs.

The ALJ gave the VE a second hypothetical at the sedentary level with the ability to sit, stand or change positions at will. The hypothetical individual was limited to simple tasks featuring a minimal degree of personal contact with less than an average degree of pressure. The VE responded with 3,800 regional jobs as a charge account clerk, surveillance system monitor, microfilm document preparer, and as a lens inserter.

Upon questioning from Plaintiff's counsel, the VE testified that, based on Dr. Glickfield's RFC, Plaintiff was unable to work. After further questioning, based on Plaintiff's testimony, he was unable to work. (Tr. 602- 10).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the

11

record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months and plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(1),423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether

the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d

13

321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

The Commissioner's Regulations mandate ALJs to provide meaningful explanations for the weight they give to a particular medical source opinion. As to a treating physician or psychologist, the Regulations state, "We will always give good reasons in our notice of determination of decision for the weight we give [the claimant's] treating source's opinion." *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. §404.1527(d)(2)). Similarly, with regard to non-examining state agency physicians or psychologists, the Regulations mandate, "Unless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." 20 C.F.R. §404.1527(f)(2)(ii) (emphasis added); *see* 20 C.F.R. §416.927(f)(2)(ii).

Where the medical evidence is consistent, and supports plaintiffs complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the

14

Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky, 35* F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky, 35* F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst* v. *Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir, 1985)(citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)). "In general, the opinions of treating physicians are accorded greater weight those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 530-31 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985); *Lashley* v. *Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler,* 756 F.2d 431 (6th Cir. 1985). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see*

15

*also Walters,* 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris,* 756 F.2d at 435. *See also Cohen* v. *Secretary of H.H.S.,* 964 F.2d 524, 528 (6th Cir. 1992). The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir. 1987). If the AU rejects a treating physician's opinion, the AU's decision must be supported by a sufficient basis which is set forth in his decision. *Walter v. Commissioner,* 127 F.3d 525, 529 (6th Cir. 1997); *Shelman,* 821 F.2d at 321.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior

16

administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

## OPINION

Plaintiff assigns five errors in this case. First, he argues the ALJ failed to give controlling weight to Dr. Glickfield's RFC. Plaintiff contends the ALJ failed in determining his RFC, impermissibly inventing his own. Second, Plaintiff alleges the ALJ failed to properly explain his decision. Plaintiff further argues the ALJ ignored Plaintiff's subjective complaints of pain. Plaintiff next argues the VE testimony conflicts with the Dictionary of Occupational Titles and DOT numbers. Finally, Plaintiff contends the ALJ erred in not considering psychological effects on the job base.

Plaintiff's first two assignments of error are directed at the ALJ's residual functional capacity finding. The ALJ determined that plaintiff has the RFC for a light work. (Tr. 20). Light work involves lifting up to 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567, 416.967. The Social Security Rulings define

17

the term "frequent" as "occurring from one-third to two-thirds of the time." Social Security

Ruling 83-10. The Ruling further defines the requirements for light work: Since frequent lifting

or carrying requires being on one's feet up to two-thirds of a workday, the full range of light

work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour

workday. Sitting may occur intermittently during the remaining time. *Id.* The ALJ determined

that plaintiff was capable of performing a reduced range of light work, specifically, "He is

limited to jobs that would involve only minimal personal contacts. He is further limited to jobs

that would involve pressure for production at no greater than a level 3, using a 1-10 scale." (Tr.

21).

In determining Plaintiff's RFC, the ALJ stated,

> It is the consensus of treating and examining sources that the
> claimant has some functional restrictions which affect his ability to
> work. The claimant's "severe" impairments result in chronic back
> pain, decreased concentration, reduced stress tolerance, and
> diminished interpersonal skills. Having carefully considered the
> objective medical evidence and clinical findings of record, I
> conclude that the claimant retains the functional capacity to
> perform light work.

(Tr. 17). Resolving Plaintiff's contentions begins with the standards used by ALJs to weigh the

various medical source opinions in the administrative record.

It is well established that the findings and opinions of treating physicians are entitled

to substantial weight. "In general, the opinions of treating physicians are accorded greater

weight than those of physicians who examine claimants only once." *Walters v. Comm'r of

Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431,

435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally

18

accorded substantial deference, and if the opinions are uncontradicted, complete deference.");
*King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of H.H.S.*, 708
F.2d 1048, 1054 (6th Cir. 1983) (same). Likewise, a treating physician's opinion is entitled to
weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*,
756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th
Cir. 1983). If a treating physician's "opinion on the issue(s) of the nature and severity of [a
claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory
diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case,"
the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2); *see also Walters*, 127
F.3d at 530.

The Social Security regulations recognize the importance of longevity of treatment,
providing that treating physicians "are likely to be the medical professionals most able to
provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique
perspective to the medical evidence that cannot be obtained from the objective medical
findings alone or from reports of individual examinations, such as consultative examinations
or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and
medical evidence, the ALJ must consider other pertinent factors such as the length, nature and
extent of the treatment relationship, the frequency of examination, the medical specialty of the
treating physician, the opinion's supportability by evidence and its consistency with the
record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541,
544 (6th Cir. 2004). In terms of a physician's area of specialization, the ALJ must generally
give "more weight to the opinion of a specialist about medical issues related to his or her area

19

of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. §

404.1527(d)(5).

A review of the ALJ's decision reveals he mentions Social Security Ruling 96-2p, which states a medical opinion provided by a treating physician must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and the opinion is not inconsistent with the other substantial medical and non-medical evidence in the case record, (Tr. 18), but fails to cite or describe any of the legal criteria applicable under the various factors applicable under the Regulations. *See* Tr. 13-22.

The only medical opinion weighed in the decision was treating physician, Dr. Glickfield.

The ALJ rejected Dr. Glickfield's opinion as follows:

> Dr Glickfield originally reported that the claimant could perform a
> reduced range of light work, but later reported that the claimant
> would be limited to a reduced range of sedentary work (Exhibits
> 7F, page 3, and 12F, pages 1-5). His medical opinion that the
> claimant would be limited to a reduced range of sedentary work is
> not supported by the objective medical evidence of record and can
> only be viewed as an uncritical acceptance of the claimant's
> subjective complaints. Accordingly, I reject it. He further
> concluded that the claimant could would (sic) be unable to work
> from a mental standpoint, but he is not a mental health
> professional, and his opinion is not supported by the mental health
> professionals who treated and examined the claimant. I also reject
> this opinion.

(Tr. 18). As to Dr. Glickfield's physical RFC, it is not wholly unsupported by the record. There is evidence from other treating sources which includes objective findings such as radiculopathy, low back pain and decreased range of motion. (Tr. 491, 519). Treatment records from the VA also support Plaintiff's physician symptoms of back pain radiating down the right leg, constant low back pain, stiffness, pain in the right shoulder, weakness, dull aching, numbness, shooting,

throbbing pressure, tingling, nagging, and pain with position changes. (Tr. 165, 204, 212, 251, 261, 321, 322, 347). The question is whether these symptoms are consistent with the RFC findings by Dr. Glickman and/or other treating, examining, or reviewing sources. The ALJ has failed to specify what record evidence he relied upon in determining the Plaintiff's physical RFC, beyond a wholesale rejection of Dr. Glickman's opinion for lack of objective findings.

The ALJ rejected Dr. Glickfield's mental RFC because Dr. Glickfield was "not a mental health professional." (Tr. 18). That Dr. Glickfield is not certified in the area of mental health treatment is a proper factor to use in the evaluation of his opinions, but it is not the only factor. The Regulations required the ALJs to weigh Dr. Glickfield's opinions under several additional factors, including the nature and extent of the treatment relationship, the supportability of the opinion, and the consistency of the opinion with the record as a whole must be considered. *See* 20 C.F.R. §§; 416.927(d)(2)-(4). The ALJ did not indicate in his decision that he considered any of these factors when weighing Dr. Glickfield's opinions.

While Dr. Glickfield is a family physician, he specifically treated Plaintiff for his depression and anxiety, including prescribing psychotropic medications. Dr. Glickfield prescribed these medications for him, adjusting them when the medications seemed inadequate. *See generally,* Tr. 488-91; 516-44; 571-82. Hence, while Dr. Glickfield is not a psychiatrist and thus did not specialize in mental health treatment, his training and licensing as a family physician still made him qualified to treat and prescribe such medications for Plaintiff. In addition, the ALJ's rejection of Dr. Glickfield's opinion for the sole reason he was not a mental health professional," sidesteps the reason-giving requirements of the Regulations. The Regulations promise claimants not only an explanation but a "good explanation ... for the weight

21

we give [the claimant's] treating source's opinions." 20 C.F.R. §404.1527(d)(2). As the United States Court of Appeals for the Sixth Circuit has explained, the reason-giving requirement accomplishes two goals:

> First, the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reasons for the agency's decision is supplied. Second, the explanation ensures that the ALJ applies the treating physician rule and permits meaningful appellate review.

*Rogers v. Commissioner*, 486 F.3d at 242-43 (quoting in part *Wilson*, 378 F.3d at 544) (internal quotations omitted). Because the ALJ merely applied one regulatory factor to reject Dr. Glickfield's opinion, his decision was contrary to the reason-giving mandate set forth in the Commissioner's Regulations.

The Commissioner contends this Court may not set aside the ALJ's RFC finding given Dr. Glickfield's July 2004 opinion was consistent with an ability to perform a limited range of light work. *See* Doc. 11 at 12. The Commissioner argues that between the July 2004 opinion and the November2006 opinion, Dr. Glickfield saw Plaintiff only once, and his report consists of only subjective comments. This Court disagrees.

The ALJ's RFC finding is without substantial support in the record. There is no medical opinion of record supporting the ALJ's RFC finding. The ALJ appeared to pick and choose the limitations by Dr. Glickfield which support a finding of "light" work while rejecting those limitations indicating the contrary. To the extent the ALJ selectively referenced a portion of the record which casts plaintiff in a capable light to the exclusion of those portions of the record which do not, the ALJ's RFC does not accurately describe plaintiff's abilities and the ALJ's

22

decision upon which it is based is not supported by substantial evidence. *See Howard v. Commissioner*, 276 F.3d 235, 240-41 (6th Cir. 2002).

There remains the possibility that the ALJ's errors were harmless, *see Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007), an issue neither party specifically addresses. The Commissioner, finding no error in the ALJ's decision, argues that certain regulatory factors and evidence support the ALJ's decision to discount Dr. Glickfield's opinions. Whether or not the Commissioner has correctly applied the factors to the evidence, the Commissioner's arguments present the type of evaluation of these medical source opinions that is missing from the ALJ's decision. The harmless error issue, then, is whether the ALJ's decision, the evidence of record, or the Commissioner's arguments provide a sufficient basis for overlooking the ALJ's errors. *See Bowen*, 478 F.3d at 747-48; *Wilson*, 378 F.3d at 546-47.

It is highly doubtful that the Commissioner's *post-hoc* application of the required regulatory factors can be the sole basis to affirm an ALJ's decision when the ALJ has failed to weigh the medical opinions as required by the Regulations. "A court cannot excuse the denial of a mandatory procedural requirement protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. '[A] procedural error is not made harmless simply because the [aggrieved party] appears to have had little chance of success on the merits anyway.' To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with §1527(d)(2), would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal

23

review is appropriate, to 'set aside agency action ... found to be ... without observance of procedure required by law.'" *Wilson*, 378 F.3d at 546. (internal citations omitted).

The ALJ's errors when evaluating Dr. Glickfield's opinions were not harmless due to his explanation and in the presence of supporting objective evidence. *See* Doc. #8 at 9 (and record citations therein). Consequently, the ALJ's errors were not harmless.

Accordingly, Plaintiff's challenges to the ALJ's evaluation of her RFC are well taken.

In light of the above review, and the resulting need for remand of this case, an in-depth analysis of the parties' contentions about Plaintiff's credibility and VE testimony are unwarranted.

In conclusion, the Court finds the ALJ's decision is not supported by substantial evidence and should be reversed and remanded for further proceedings consistent with this decision.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner by **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 16 March 2009

Timothy S. Hogan
United States Magistrate Judge

24

**JAMES PRICE,**
        **PLAINTIFF**

**CASE NO. 1:08-CV-00015-SJD-TSH**
**(DLOTT, J.)**
**(HOGAN, M.J.)**

vs

**COMMISSIONER OF**
**SOCIAL SECURITY,**
        **DEFENDANT**

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS REPORT & RECOMMENDATION

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation within **TEN (10) DAYS** of the filing date of this Report and Recommendation. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

25